The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. We have three argued cases this morning. The first is number 19-1928, Big Baboon, Inc. v. SAP America. Mr. Wright. Good morning, Ellen. Thank you. This case is a patent infringement case involving Big Baboon's patent for enterprise software being asserted against SAP and HP for their systems that also are enterprise software related. The patent that was asserted was invalidated on the summary judgment motion by the district court under the Evans-Coolen Doctrine for being on sale prior to more than one year earlier than the critical date. Your problem, Mr. Wright, it seems to me, is that you have these invoices which show a sale of the 3.1 version in 1996, October 1996, and the other side introduced declarations, expert testimony by individuals who said that those products sold in October 1996 were web-enabled. And I don't see where you produced any contrary evidence that would raise a genuine issue of material fact. Could you tell us where the contrary evidence is? Certainly, Your Honor. The contrary evidence was the declaration of Greenspun, which is a declarant of SAP who made a declaration in a covered business method petition against the same patent at the patent office. And Greenspun states expressly in his declaration that… What paragraph of his declaration are you relying on, counsel?  What paragraph of his declaration are you relying upon? This would be appendix 1068 and 1069, where basically he says… 1068 and 1069 is what you're talking about? saying that the Java-enabled suite, that would be the web enablement, is occurring thereafter in a controlled rollout immediately. Well, how then could it be on sale and in use in October 1996 and then being in a controlled rollout at the end of 1996 going into 1997? Doesn't that same paragraph say that the web interface was available and that they were working on it in the early part of 1996? They were still working on it, but it wasn't fully web-enabled. And again, the standard here is clearly convincing evidence at the summary judgment phase. So there's contradictory testimony from their own declarants on when they have full web enablement. What about a contradictory? What paragraph, what sentence does he say is contradictory? I understand this affidavit, this declaration to be directed to the question of whether…of obviousness over the 3.0 version of this and not to address the 3.1 version. Where does he address the 3.1 version? So he literally says in that same paragraph I was quoting in 1068 to 1069 is he says…basically he does say that the web-enabled 3.1. He talks about it expressly. And in fact, the quote he has is that SAP formally unveiled R3 system 3.1, a Java-enabled suite of applications for conducting businesses on the web, and SAP plans a controlled rollout of 3.1 immediately. And again, that's kind of…how would it be in sale in October of 1992? But even that article is before the critical date. Well, we don't know. That's the thing. It could be December. That would be days before the critical date. But it says they plan to do it, and it says in the future. So it's sometime thereafter. And the thing about Greenspun's testimony is it was done in a covered business method proceeding. And had he had…could he have said it was on sale prior to the critical date? He would have, but he didn't. They never made a 102 argument. They made a 103 argument at the patent office. And so this is evidence… That's enough to defeat somebody's judgment that he didn't make the argument there that they're making now? Well, the key is, you know, one, you have contradicting facts. You've got what Rodenkamper says, declarant of SAP in this case, and then you have what Greenspun said at the patent office. And they contradict on when this was webinarily made. Isn't there a difference between a single sale, which could be enough for 102, but…and a full-scale rollout? Well, for whatever reason, they did not say, you know, full-scale… The key is web enablement. And the district court, which doesn't discuss any of this, the district court does not mention the standard of clear and convincing, does not mention 287…35 U.S.C. 287, and does not mention Rodenkamper or Greenspun, or why the district court believes one or the other. So you have this key issue. And unfortunately, for some reason, the district court got confused with the plaintiff arguing about the technical enablement, the web enablement. There's very detailed documents of what it takes to put the web tools into this to make web enablement. And that was in front of the court, and that was because of the local rules of the Northern District of California. And that testimony is just not there. Rodenkamper never says the technical enablement exists. And so the district court… I'm trying to find out… I mean, we can sustain the district judge in a summary judgment case on any basis that's supported by the record. And your opponents are arguing that the on-sale bar is established by these invoices and the testimony that the invoices sold a web-enabled product. Now, you pointed us to this testimony of Greenspun. Is there any other testimony that you argue contradicts that showing? There's also literature from the SAP itself that discusses at the end of 1996 how they were rolling out web enablement. That would be the manual of the R3 system. Do you have any specific testimony that the product sold in October 1996 was not web-enabled? I do not have specific testimony to that effect, but Greenspun's statement that it was not web-enabled until sometime after 1996… He doesn't say that. There is no such statement. But he does say that at the end of 1996, there's a rollout of web-enabled R3.1, and that's contradictory at the summary judgment stage to say, you know, we're going to believe Rodent Camper and not Greenspun would be improper. This is Judge Arreno, our counselor. It seems to me that maybe the statements that the client was making, Greenspun, corroborate more the dates on the invoices than anything else. Again, personally, the invoices are just hearsay of what's being shipped. So you do need evidence of what exactly is being shipped, not just somebody saying that it's 3.1. Again, the district court does not discuss this. But the invoices are business records, are they not? They are business records, but they're not substantive. It says 3.1. Is that web-enabled 3.1? We don't know. You have testimony from Rodent Camper that the sales involved a web-enabled 3.1. So Rodent Camper's testimony says that it is web-enabled, but when the plaintiff put forth evidence of web-enabled, what that means and the elements of that, the technical elements, not plain elements, technical elements that make it web-enabled, are not present, and he never testifies that they are present in that system. There are five different technical components that go in there to make the accused device. Again, that was explicitly pled by the plaintiff. And the plaintiff then, once the plaintiff brought that up, the district court confused arguing technical elements versus plain elements. We weren't asking for a claim-by-claim comparison, the Java, the web interface, things like that. There was, I mean, it wasn't just the invoices. There was lots of testimony. There were articles about how far they had come during the summer and how fast they were working. I mean, there was, against that, you have to raise a genuine issue of material fact, and all you have is a statement that refers to a full-scale rollout of something by the end of the year. So you want us to assume that that occurred in the last, that not a single sale occurred before the last eight days of the year? Well, it's not, so you have contradictory testimony, Your Honor, on that very point. You've got Greenspun saying one thing, and you have Rogencampus saying something else on when web-enabled technology existed. And the fact that SAP, which filed a reexamination against this patent, that did not kill Claim 15, and it had evidence about 3.1 being on sale, then SAP goes back to the Patent Office and tries to invalidate Claim 15, I'm sorry, and they render it unpatented as Claim 15, and the covered business method doesn't bring up this sale. All of a sudden, 20 years later, they figure out that it's actually on sale as of October 1996, when all of the evidence shows that it was probably on sale sometime in 1997. And again, this is at the summary judgment stage. This is not at full adjudication. Counselor, this is Judge Arena again. Can you real quickly, I think you may even be out of time, but can you real quickly address the Evans cooling case and the impact that has on the position you just articulated? So, yes, Your Honor, very quickly. Evans cooling does apply, and plaintiffs never said it does not. That is the doctrine where if you accuse a product of infringement, if it's earlier than you, you're invalidating your patent because it would literally lead the claims to go both ways on your patents. And so we've always maintained that Evans cooling doctrine would apply, but the actual enabled 3.1 system, web-enabled, was not on sale prior to our critical date in December. I hope that answers your question, Your Honor. Thank you. All right, Mr. Wright, do you want to save the rest of your time for rebuttal? Yes, Your Honor. Okay. Mr. Carraway. Yes, Your Honor, may it please the court. This case presents a highly unusual scenario. That's because patentees generally perform the due diligence to ensure that they do not accuse prior art of infringement. But a plaintiff is the master of its case. It chooses what products to accuse, and when the plaintiff overreaches by accusing of infringement a product that turns out to be prior art, this court's precedent in Evans cooling is clear, that the patentee bears the consequences of that choice, and its accusation serves as an admission that the product meets all elements of the claims so that all the defendant needs to do is show invalidity by proving that the accused product was, in fact, on sale before the critical date. Here, the district court followed Evans cooling. It held Big Baboon to the consequences of its choice. Big Baboon repeatedly accused SAP's product named R3 Release 3.1 of infringement, and on summary judgment of invalidity under Evans cooling, SAP did not need to show that any element of the claims was in the product. Instead, the only question was whether what Big Baboon had accused, R3 Release 3.1, was, in fact, on sale. And here, the on-sale evidence is different. Remind me, what were the dates of the re-exam and the CBM proceeding? Yes, Your Honor. The re-exam proceedings were filed, I believe, in 2010, after the first case by Big Baboon had been filed in the Central District of California. And there were two re-exams because there were two patents, the parent patent to the asserted patent in this case, the 690, and the 275, which is the asserted patent in this case. And those re-examinations proceeded from around 2010. I believe the first one was completed around 2015 and the last one around 2017 or 18. And then the CBM on the 275 was filed in 2015 after the re-examinations were complete and this court had affirmed the patent office's findings. What is your response to your friend on the other side who said that you didn't raise this on-sale issue? And if it's so clear, why would you have gone through all of those exercises without raising this question? Yes, Your Honor. There was a very good reason why SAP focused on what it did in the CBMs, which is the 3.0 eART. And in particular, during the re-exam, the patent office found that the online documentation for 3.0 e, the product before 3.1, that that online documentation disclosed all elements of Claim 15 of the 275 patent with the sole exception of the web enablement piece. That is because 3.0 e was not a web-enabled product. And because the patent office had already made those findings, it was a short put, so to speak, to show that the web enablement piece would have been an obvious addition to what was already inexistent and what the patent office had already found was present in the prior product. And as a result, SAP took that nucleus of PTO findings, and then its expert, Dr. Greenspun, explained how adding a web enablement piece to what the patent office had already found… Right. I understand what he did. I understand what you did. But my question is, wouldn't it have been a shorter put to just say that that web-enabled feature existed in a product that was already on sale before the critical date? It would have been, Your Honor, except that that requires that SAP have documentation and other evidence to show that every element of the claim is in the 3.1 product. And with a product that had just been launched on sale, and given that this was back in 1997, the documentary evidence was harder to come by. And in this case, what we did not have in the PTO during the CBM proceeding is what we had in front of the district court, which is repeated and specific allegations by Big Baboon that every single element of Claim 15 was in R3 3.1. That is what the district court said made this case different from the PTO, and that formed the basis for invalidity in the district court. The on-sale evidence in this case was not genuinely disputed, and it was thorough, including contracts with SAP customers, the shipping record, testimony from Mr. Rogenkemper, Ms. Fisher, Mr. Neuber. They not only provided the shipping records, but they also authenticated where they came from and how they were – where they were found in the system. Big Baboon did not bother to depose any of these witnesses. They did not dispute the genuineness of the documents. So SAP fully met its burden, and the district court was right to grant summary judgment of invalidity. Now Big Baboon seeks to end-run this court's Evans-Cooling Doctrine by characterizing an element-by-element comparison, which is not required, with what it calls a factual determination of the technical software elements required to create the accused product, that they're applied for. And specifically, again, as the court noted in Mr. Reich's argument, the question that Big Baboon raises is whether R3 3.1 was fully enabled. But Big Baboon did not make a distinction between R3 3.1 before the critical date and after. Big Baboon said that R3 3.1 did have web enablement, and that's at Appendix 1924 to 25, which is the First Amendment complaint. And also in the infringement contentions – I'm sorry. The First Amendment complaint was at Appendix 1248, and in the 3.1 – But the court is not accusing the 1996 product of infringement because that was before the patent issue. What – well, yes, Your Honor, Judge Dyke. What Big Baboon accused was, quote, modified versions of R3 release 3.0e, which include web functionality. And then it said those products include R3 release 3.1. Big Baboon was under the assumption that R3 3.1 was not sold until after the critical date. That was a wrong assumption, and that is the same assumption that has been made in the other – in the cases in this court's precedent, Van Moore and Evans-Cooling… … where a plaintiff makes an accusation that a product of infringement is infringing, and it assumes that it got the due diligence right and chose a product that was not prior art. But when that assumption is wrong, that assumption is based on the patentee's choice, and the patentee must live with those consequences. Now, should there be a way for Big Baboon to get around its accusation and try to show that what was sold pre-critical date didn't have the web-enabling element? I question whether that's allowed under Evans-Cooling, but in any event, it doesn't matter here because even if there could be a way for a patentee to walk away from its broad allegations, that burden must be on the patentee to come forward with some evidence. Big Baboon failed to do so. All it has is speculation. But you don't even need Evans-Cooling in this case, do you? I mean, you put in undisputed evidence that the product, the web-enabled product, was sold before the critical date. Why do you need to rely on Evans-Cooling at all? Well, Your Honor, what we did not provide is an element-by-element comparison of the features of R33.1 and the claims. Could we have done that? Perhaps with digging through enough documentation and doing so, we could have done that. But at this stage of the case, the accusation by Big Baboon essentially fills in the claim chart for us. They're only challenging web-enablement. They're not challenging a failure to meet other claim limitations, right? I am not sure whether Big Baboon would agree with that. I know that Big Baboon does challenge the web-enablement piece. And there was ample testimony in the record from Mr. Rogan Kemper that the same product that was sold pre-critical date and post-critical date, R33.1, had a web-enablement aspect to it. Okay. Anything further? Do my colleagues have any further questions? No, I don't. I do have a question. Yes, Your Honor. Under the evidence scoring system, if a plaintiff identifies a deceased product, evidence says that that serves as admission that the deceased product meets all the limitations of the sorted claim. And I'm kind of concerned as to how restrictive that seems to be. That's almost dispositive of the issue of invalidity. And I'm wondering if it serves, if the identification of the accused product actually serves as an admission, or does it raise perhaps a rebuttable presumption? And I think if it raises a rebuttable presumption, then I wonder as to how appropriate it was to decide this on summer judgment. Yes, Your Honor. Reading the Evans Cooling case and the Vanmore case, which this court decided relying on Evans Cooling, I don't see a, there's not a statement one way or the other whether it's an admission or whether it's a presumption that is rebuttable. I think the right answer to this is that it should be an admission, and that is because patentees need to do the due diligence before they file a complaint and start a lawsuit. That said, even if it was rebuttable here, the district court got it exactly right because there was nothing that was rebutted. Big Baboon provided no evidence whatsoever that there was, that the R3 3.1 product was not web-enabled prior to the critical date. The only evidence in the record was the evidence from Mr. Roggenkamper and even from Big Baboon's own citations to documents in the CPM and the Greenspan Declaration. All of those articles that it cites are pre-critical date and are corroborating, not contradicting, the evidence of the shipping records and of Mr. Roggenkamper that R3 3.1 was web-enabled when it was shipped in 1996. Okay, thank you. And if there are no further questions, I would yield the rest of my time. Thank you. All right, thank you, Mr. Carey. Mr. Wright? Yes, John. Thank you. How much time does Mr. Wright have left? Three minutes and 37 seconds. Okay, thank you. So, Your Honor, first and foremost, just to be clear, the mapping that was done by Greenspan in the covered business method petition, that literally mapped the entirety of the R3 system onto claim 15. That is how the plaintiff became aware of the infringement. And Greenspan said, and we actually did the last piece, web enablement, in 1997. Therefore, that shows it's obvious. So that's why the plaintiff and the defendant are on the same page, because basically the plaintiff is using defendant's own mapping of claims to assert infringement. Did you argue that anything else was missing in the October 1996 sales other than web enablement? As far as we're aware, Your Honor, it would be the same. It would be that system, but for web enablement, that one element. That is a claim element. And I just wanted to also point to, I could not remember, the R3 handbook itself, that's SAP's own materials, it's in the appendix at 12, so 2162 to 2164. That also says 3.1 wasn't available until the very end of 1996. So, again, that shows evidence backing what Greenspan said about web enablement. And with that, unless there are any further questions, we have my time as well. Okay, thank you. Thank both counsel. The case is submitted.